Fourth Division
December 20, 2007

No. 1-01-2776

| | | |
|---|---|---|
| *In re* E.H., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| | ) | Cook County |
| (The People of the State of Illinois, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | No. 00 JD 6501 |
| v. | ) | |
| | ) | |
| E.H., | ) | Honorable |
| | ) | Rodney H. Brooks, |
| Defendant-Appellant). | ) | Judge Presiding. |

MODIFIED UPON DENIAL OF PETITION FOR REHEARING

PRESIDING JUSTICE NEVILLE delivered the modified opinion of the court:

The minor defendant, E.H., was charged in a petition for adjudication of wardship with two counts of aggravated criminal sexual abuse and aggravated criminal sexual assault against K.R. and B.R. After a bench trial, E.H. was found delinquent and made a ward of the court. She was also sentenced to 5 years of probation and was required to register as a sex offender for 10 years. E.H. has filed an appeal from the charges against her asserting that her conviction should be reversed because she was not allowed to cross-examine one of her accusers, which was in violation of her constitutional rights under the confrontation clause.[1]

---

[1]"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause

BACKGROUND

E.H. was charged in a petition for adjudication of wardship with two counts of aggravated criminal sexual abuse and aggravated criminal sexual assault against K.R. and B.R. The charges against E.H. were brought as a result of complaints made by the two children regarding alleged occurrences between June and August of 1999 while E.H. was babysitting them at E.H.'s grandmother's home. However, these acts were not reported until one year later, in November of 2000. At the time of the alleged occurrence, E.H. was 13 years old, and her accusers, K.R. and B.R., were 5 and 2 years old, respectively. K.R. and B.R. made complaints to their grandmother that E.H. made them lick her vaginal area, buttocks and breasts on four separate occasions. Based upon these charges, E.H. was tried, convicted of the charges against her and adjudicated a ward of the State.

Testimony at the Section 115-10 Hearing

Prior to trial, the State requested a hearing pursuant to section 115-10 of the Illinois Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10 (West 2000))[2], in order to determine

of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence." U.S. Const., amend. VI.

[2]Section 115-10 provides in relevant part:

§115-10. Certain hearsay exceptions.

(a) In a prosecution for a physical or sexual act perpetrated upon or against a child under the age of 13, *** the following evidence shall be admitted as an exception to the hearsay rule:

1-01-2776

whether the statements made by K.R. and B.R. to their grandmother were admissible. Pursuant to section 115-10, which is an exception to the hearsay rule, the statements of a child under the age of 13 are admissible if they "provide sufficient safeguards of reliability," the witness either testifies at trial or is "unavailable as a witness," and the statements made can be corroborated by other evidence. 725 ILCS 5/115-10 (West 2000).

At the hearing, K.R. and B.R.'s grandmother, Mary Ann R., testified that K.R., B.R. and their

---

(1) testimony by the victim of an out of court statement made by the victim that he or she complained of such act to another; and

(2) testimony of an out of court statement made by the victim describing *** an element of an offense which is the subject of a prosecution for a sexual or physical act against that victim.

(b) Such testimony shall only be admitted if:

(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child or instiutionalized severely, or profoundly mentally retarded person either:

(A) testifies at the proceeding; or

(B) is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement[.] 725 ILCS 5/115-10 (West 2000).

3

mother, Shareen R., had lived with her since October 1999. She stated that on November 14, 2000, she went to check on K.R. and B. R., who were playing in her bedroom, when she heard the girls talking and asked them what they were talking about. K.R. replied that they were talking about E.H. and that she made them suck her "puckets" and lick her "front behind" and " back behind" while E.H. was babysitting them. K.R. also told Mary Ann that E.H. made them take their clothes off and lie on top of her. Mary Ann testified that B.R. also told her that E.H. made them suck her "puckets" and lick her "front behind" and "back behind." Mary Ann stated that the girls refer to breasts as "puckets" and to their vaginal area and buttocks as "front behind" and "back behind," respectively.

Mary Ann testified that the following day, on November 15, 2000, while she was in her bedroom, the girls came in to talk to her again and repeated the details they had described the day before. She stated that neither of the girls was hesitant while relating the incident to her and that she did not prompt the girls with questions. Mary Ann testified that K.R. told her the incident occurred during "the summer of 1999." When Mary Ann asked the children why they had waited so long to tell her about the incident, K.R. told her it was because E.H. had threatened them. When Mary Ann asked her why she had not told her mother about the incident, K.R. stated it was because E.H. had "smacked her in the face" and told her she would smack her again if she told her mother. At the conclusion of the grandmother's testimony at the section 115-10 hearing, the court found the statements of K.R. and B.R. to be "reliable" pursuant to section 115-10 and granted the Sate's motion to use the statements at trial.

### Trial Testimony

At trial, Shareen, Mary Ann, K.R., Jesse Terrazas, an investigator with the Chicago police

4

department, Bernice Wilkins, a caseworker with the Department of Children and Family Services (DCFS), and Willie H., E.H.'s grandmother, rendered testimony. B.R. did not testify.

Shareen testified that she had known E.H. since E.H. was five years old. She stated that during the summer of 1999, E.H. babysat K.R. and B.R. four times: twice in June, once in July, and once in September. Shareen did not use E.H. as a babysitter again after September of 1999. During the time E.H. was babysitting the girls, the girls did not make any complaints about E.H. Shareen stated she did not learn about the abuse until her mother told her what the girls said. After her mother told her what the girls said about E.H., Shareen phoned the police. Shareen and her daughters were interviewed at their home by an investigator.

K.R., seven years old at the time of trial, also testified. When asked whether E.H. ever did anything bad to her, K.R. responded, "she made me suck her puckets." K.R. pointed to her chest to show the court what she meant by "puckets." K.R. stated that E.H. has two "puckets" and that another word for "puckets" is "breasts." K.R. also testified that E.H. made her "suck her booty." When asked where her "booty" was, K.R. pointed to her vaginal area and stated that another word for that area was "front butt." K.R. further testified that E.H. also made her suck her "back butt." When asked to show the court where her "back butt" was, K.R. stood up and pointed to her tailbone. When asked if E.H. made her do this more than once, K.R. responded "yes," but she could not remember how many times. K.R. testified that she also saw E.H. do things to her sister, B.R. K.R. stated that E.H. made B.R. suck her "puckets," "back butt," and "front butt" also. K.R. stated that during this time all three girls were unclothed. K.R. testified that she removed her clothes because E.H. told her to and that E.H. "smacked" her. K.R. answered affirmatively when asked whether she

was scared of E.H.

Mary Ann, the girls' grandmother, also testified at trial. Mary Ann retold the circumstances as she told them at the section 115-10 hearing, recounting where the girls were and what they were doing when they first spoke to her about E.H.

Mr. Terrazas, the investigator, testified that he spoke with K.R. and B.R. at their grandmother's house on November 20, 2000. During this discussion, K.R. told him that the incident occurred between June and September of 1999. K.R. told Investigator Terrazas that E.H. made her take her clothes off and that K.R. used the words "front booty" and "back booty" to describe E.H.'s vaginal area and buttocks. When Investigator Terrazas asked K.R. why it had taken her so long to tell anyone about the incident, K.R. responded that it was because E.H. said she would "whip us again." Investigator Terrazas also spoke with B.R., who also used the words "front booty" and "back booty" to describe the vaginal area and buttocks.

Bernice Wilkins, the caseworker with DCFS, testified that she visited Mary Ann's home on January 16, 2001, to check on K.R. and B.R. Ms. Wilkins spoke to Mary Ann about the statements made to her by K.R. and B.R. Mary Ann told Ms. Wilkins that the children did not come and tell her about E.H.; rather, she overheard them talking about it and then questioned them regarding the occurrence.

Ms. H., E.H.'s grandmother, testified that she was home while E.H. babysat K.R. and B.R. and that she watched them the entire time. Ms. H. stated that the only time they were out of her sight was when they were in front of the house. She also stated that the girls were not upset to be around E.H. She also testified that about a week prior to E.H.'s arrest, on November 20, 2000, Shareen

6

came over with K.R. and B.R. and asked if she could move into Ms. H.'s home. When Ms. H. told Shareen that she could not move in, Shareen became angry.

At the close of trial, the judge made a finding of delinquency and E.H. became a ward of the court for the aggravated criminal sexual abuse and the aggravated criminal sexual assault of K.R. and B.R. The judge sentenced E.H. to 5 years of probation and required her to register as a sex offender for 10 years. E.H. appealed from the finding of delinquency and sentence.

## Procedural Background

On November 25, 2002, E.H. filed an appellate brief in which she argued that the trial court erred in admitting B.R.'s statements to her grandmother at trial. She argued that the State did not meet its burden of showing that the statements were sufficiently reliable pursuant to section 115-10. 725 ILCS 5/115-10 (West 2000). She raised three issues in her brief: (1) whether she could be found delinquent of aggravated criminal sexual abuse and aggravated criminal sexual assault in violation of the one-act, one-crime doctrine where two aggravated criminal sexual abuse adjudications were based on the same physical act for which she was adjudicated delinquent; (2) whether the trial court abused its discretion in admitting B.R.'s statements at trial under the hearsay exception in section 115-10; and (3) whether the Sex Offender Registration Act (730 ILCS 150/1 et seq. (West 2000)), is unconstitutional.

On March 8, 2004, the United States Supreme Court decided in Crawford v. Washington, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004), and held that based upon the confrontation clause, testimonial statements of witnesses absent from trial should be admitted only where the declarant is unavailable and only where the defendant has had a prior opportunity to cross-examine

1-01-2776

the witness. Crawford, 541 U.S. at 68, 158 L. Ed. 2d at 203, 124 S. Ct. at 1374. The Court further renounced the "unpredictable" and "amorphous" test enunciated in Ohio v. Roberts, 448 U.S. 56, 66, 65 L. Ed. 2d 597, 608, 100 S. Ct. 2531, 2539 (1980), that hearsay evidence is admissible if it demonstrates adequate indicia of reliability. Crawford, 541 U.S. at 62-69, 158 L. Ed. 2d at 200-04, 124 S. Ct. at 1371-75.

Pursuant to the Crawford decision, the defendant filed a motion to cite the case as additional authority in support of her appeal, which was granted on April 9, 2004. Relying on Crawford in her motion, E.H. argued that her constitutional right to cross-examine B.R. was violated and that her conviction must be reversed.

On May 7, 2004, without addressing Crawford, this court entered an order affirming the trial court's decision. In re E.H., No. 1-01-2776 (May 7, 2004) (unpublished order under Supreme Court Rule 23). In re E.H., No. 1-01-2776 (unpublished order under Supreme Court Rule 23) May 7, 2004 (E.H. I), this court (1) concluded that the trial court abused its discretion when it admitted B.R.'s statements through her grandmother's testimony as an exception to the hearsay rule based on section 115-10 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10 (West 2000)), but (2) found the admission of the grandmother's testimony harmless because of K.R.'s testimony. In that order, although we reasoned that under section 115-10, the time, content and circumstances of B.R.'s statements did not provide sufficient "safeguards of reliability" (see 725 ILCS 5/115-10 (West 2000)), we held that B.R.'s statements fell under the rubric of harmless error, utilizing the abuse of discretion standard of review.

On May 28, 2004, the defendant filed a petition for rehearing in which she reiterated the

holding in Crawford and stated that we failed to apply Crawford in our analysis and ruling. After the State filed an answer to the defendant's petition for rehearing, we granted the defendant's petition and vacated the May 7, 2004, order. On January 28, 2005, in In re E.H., 355 Ill. App. 3d 564 (2005) (E.H. II), this court (1) found that E.H. did not have an opportunity to cross examine B.R., her accuser, regarding B.R.'s statements implicating her in a crime, therefore, E.H.'s constitutional rights were violated; (2) found that the evidentiary error in E.H. was not harmless beyond a reasonable doubt; and (3) reversed and remanded E.H.1 with directions. We held that the defendant had a constitutional right to confront her accuser and because she did not have an opportunity to do so in this case, her constitutional rights were violated. U.S. Const., amend. VI.

The supreme court vacated the judgment in E.H.II and remanded the case to this court with directions to first consider the non-constitutional issues raised in the trial court and, if necessary, to reach the constitutional issues. In re E.H., 224 Ill. 2d 172, 181-82 (2006). The supreme court prescribed the following procedure for this court to follow: (1) first, to determine whether the trial court erred when it ruled that B.R.'s hearsay statements were admissible through her grandmother's testimony pursuant to section 115-10 of the Code; (2) next, if the trial court erred when it admitted B.R.'s statements, then it must be determined whether the error was harmless using the evidentiary harmless error test: whether there is no reasonable probability that the trier of fact would have acquitted the defendant absent the admission of B.R.'s statements (People v. Nevitt, 135 Ill. 2d 423, 447 (1990)); (3) if the trial court erred when it admitted B.R.'s statements and the error was not harmless, then E.H. must receive a new trial; and (4) only if the trial court's section 115-10 ruling was not error or was error but harmless, do we reach the constitutional issue and determine, using the

9

constitutional harmless error test, whether the admission of the grandmother's testimony was harmless beyond a reasonable doubt. In re E.H., 224 Ill. 2d at 180.

ANALYSIS

First, pursuant to the supreme court's order, we address the nonconstitutional issue. We must determine whether the trial court erred in when it admitted B.R.'s outcry statement at trial. We must decide whether B.R.'s statements, testified to at trial by her grandmother, Mary Ann, constituted inadmissible hearsay. We are also mindful that Jesse Terrazas, an investigator with the Chicago police, interviewed B.R.

Section 115-10 of the Code codifies exceptions to the hearsay rule. Section 115-10 provides: "(a) In a prosecution for a physical or sexual act perpetrated upon or against a child under the age of 13, *** the following evidence shall be admitted as an exception to the hearsay rule: (1) testimony by the victim of an out of court statement made by the victim that he or she complained of such act to another; and (2) testimony of an out of court statement made by the victim describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual or physical act against that victim." 725 ILCS 5/115-10 (West 2000). In addition, section 115-10 makes such testimony admissible if "(1) [t]he court finds in a hearing conducted outside the presence of the jury that the *time, content, and circumstances of the statement provide sufficient safeguards of reliability*; and (2) [t]he child *** either: (A) testifies at the proceeding; or (B) is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement." (Emphasis added.) 725 ILCS 5/115-10 (West 2000). The admission of statements by a minor under 13 is a matter within the discretion of the trial court and

1-01-2776

will not be reversed absent an abuse of discretion. People v. Gilliam, 172 Ill. 2d 484, 513 (1996), citing People v. Ward, 101 Ill. 2d 443, 455-56 (1984); accord Crane v. Kentucky, 476 U.S. 683, 689-90, 90 L. Ed. 2d 636, 644-45, 106 S. Ct. 2142, 2146 (1986).

The trial court held a hearing, found E.H.'s statements reliable, permitted Mary Ann to testify at the trial, and admitted B.R.'s hearsay statements through her grandmother's testimony. First, in order to determine whether B.R.'s statements were properly admitted into evidence, we examine "the time, content, and circumstances" surrounding B.R. making her statements to Mary Ann to determine if the statements provide "sufficient safeguards of reliability." 725 ILCS 5/115-10 (West 2000). With respect to time, we note that one-year passed between the alleged acts and B.R.'s outcry in this case, and this fact weighs against the reliability of her statements. In addition, while the one-year delay in and of itself does not make B.R.'s statements unreliable, they becomes less reliable when viewed in conjunction with B.R.'s age ---- she was two years old at the time of the alleged incident. We question whether one year later, at the age of three, B.R. would be able to recount the details of what took place with E.H.

Next, we examine the contents of the statement. Mary Ann walked in on the girls talking and asked them what they were talking about. The girls then told Mary Ann about the incident with E.H. During two conversations, Mary Ann testified that she did not question or prompt B.R. when talking to her about the incident. We note when examining Mary Ann's testimony that K.R., the older child, was first to state her version of the events: K.R. told her grandmother that E.H. made them suck her "puckets" and lick her "front behind" and " back behind" while E.H. was babysitting them. Then B.R. gave her version: Mary Ann testified that B.R. also told her that E.H. made them suck her "puckets"

11

and lick her "front behind" and "back behind." It is our considered opinion that B.R., in stating what had happened with E.H., was merely repeating what her seven-year-old sister told her grandmother.

Next, we consider the circumstances surrounding the giving of the statements. We note that the two girls talked to their grandmother at the same time and that B.R.'s story was identical to K.R.'s. We also note that B.R. used the identical words used by K.R. to describe "breast," "vagina," and "buttocks". Finally, we note that the reliability of B.R.'s statement was not tested in the crucible of cross-examination. Crawford, 541 U.S. at 61, 158 L. Ed. 2d at 199, 124 S. Ct. at 1370.

Once B.R.'s statements were admitted into evidence, the court was supposed to instruct the jury that the jury was to determine the weight and credibility to be given to the statement and in making the determination to consider the age and maturity of the child. 725 ILCS 5/115-10(b)(3) (West 2000). The State brought this case pursuant to the Juvenile Court Act of 1987 (705 ILCS 405/1-1 et seq. (West 2000)), therefore, there was no jury. Nevertheless, there is no evidence in the record that the trial judge, the trier of fact, interviewed B.R. or considered her age and maturity when determining her credibility and weight to be given to her statements. Accordingly, we conclude that the trial court abused its discretion in admitting B.R.'s statements to Mary Ann as an exception to the hearsay rule.

The next issue we address is whether the admission of B.R.'s hearsay statements was harmless error. According to Illinois case law, an evidentiary error is harmless " 'where there is no reasonable probability that the jury would have acquitted the defendant absent the' error." In re E.H., 224 Ill. 2d 172, 180 (2006), quoting People v. Nevitt, 135 Ill. 2d 423, 447 (1990). We note that five witnesses testified at this trial whose testimony is directly related to E.H.'s alleged commission of the

sexual assault: (1) K.R., (2) Mary Ann, (3) Jesse Terrazas, (4) Bernice Wilkes and (5) Willie H. However, the only admissible evidence connecting E.H. to the sexual assault came from K.R., B.R.'s sister.

The testimony from three witnesses concerning the sexual assault was inadmissible hearsay. First, Mary Ann's testimony concerning the sexual assault was inadmissible hearsay because the time, contents and the circumstances surrounding B.R. making the statements to her grandmother made B.R.'s statements unreliable. Second, Jesse Terrazas, the police investigator, obtained some of his accusatory information concerning the sexual assault from B.R.; therefore, his testimony connecting E.H. to the alleged sexual assault should not have been admitted at the trial. See People v. Jones, 153 Ill. 2d 155, 160 (1992) (a police officer's testimony concerning his conversation with a witness or a victim is inadmissible when the substance of the conversation is admitted into evidence to prove the truth of the matter asserted --- that the defendant is the person who committed the crime); People v. Gacho, 122 Ill. 2d 221, 248 (1988) (when a police officer testifies to the substance of his conversation with a victim, the testimony is objectionable as hearsay). Finally, Bernice Wilkens, the DCFS caseworker, testified that she obtained her information connecting E.H. to the sexual assault from B.R.'s grandmother. In light of our evidentiary ruling finding that B.R.'s statements were unreliable and the grandmother's testimony was inadmissible hearsay, the caseworker's testimony concerning E.H. should not have been admitted at the trial. Jones, 152 Ill. 2d at 160; Gacho, 122 Ill. 2d at 248.

Other than K.R.'s statements, the only other admissible evidence concerning the sexual assault came from E.H.'s grandmother. Ms. H. provided exculpatory evidence because she testified that she

was at home when E.H. babysat K.R. and B.R., that she watched the children the entire time, and that the only time the children were out of her sight was when they were in front of the house. In this case, we cannot say there is overwhelming evidence of E.H.'s guilt because we have the inculpatory testimony of a seven-year-old child who waited over a year to reveal what occurred and the exculpatory testimony of an adult who said the incident did not occur because the children were never out of her sight. Finally, given the fact the seven-year-old witness's inculpatory, admissible testimony was contradicted by E.H's grandmother's exculpatory testimony, we cannot conclude that there was no reasonable probability that the trial judge would not have acquitted the defendant absent the error.

In addition, we cannot overlook the fact that the trial judge considered inadmissible hearsay testimony from B.R.'s grandmother, from police investigator Terrazas, and from DCFS caseworker Wilkens when he reached his verdict. See Jones, 152 Ill. 2d at 160; Gacho, 122 Ill. 2d at 248. When the trial judge is the trier of the fact, there is a presumption that the judge only considered admissible evidence and disregarded inadmissible evidence in reaching his conclusion. People v. Wallenberg, 24 Ill. 2d 350, 354 (1962), citing People v. Alexander, 21 Ill. 2d 347 (1961); People v. Grodkiewicz, 16 Ill. 2d 192 (1959); People v. Burts, 13 Ill. 2d 36 (1958). However, when a trial judge admits inadmissible evidence and considers evidence that was not properly admitted, the judge's error rebuts this presumption. Wallenberg, 24 Ill. 2d at 355.

In this case, given the fact that the testimony of three witnesses that connected E.H. to the alleged sexual assault was improperly admitted in this case, given the fact that two witnesses provided admissible but contradictory testimony regarding E.H. and the alleged sexual assault, and given the fact that inadmissable testimony was admitted, we cannot presume that the trial judge disregarded

the inadmissible testimony.  Accordingly, we find that the error was not harmless and we reverse and remand this case for a new trial.

For the foregoing reasons, the judgment of the trial court is reversed and remanded.

Reversed and remanded.

QUINN, J., and MURPHY, J., concur.